USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1-30-2020

United States District Court
Southern District of New York

| | |
|---|---|
| EVERETTE WEAVER, | |
| Plaintiff, | |
| | 17 Civ. 1406 (LAP) |
| - v. - | |
| NICOLE E. SCHIAVO, ESQ., et al., | |
| Defendants. | |
| EVERETTE WEAVER, | |
| Plaintiff, | |
| | 18 Civ. 9955 (LAP) |
| - v. - | |
| DIANNE BRAUN HANLEY, ESQ., et al. | |
| Defendants. | |
| EVERETTE WEAVER, | |
| Plaintiff, | |
| | 09 Civ. 5091 (LAP) |
| - v. - | |
| INDYMAC FEDERAL BANK, FSB, et al. | |
| Defendants. | |

## MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

This order marks the latest installment in pro se plaintiff Everette Weaver's scorched-earth campaign to undo a foreclosure judgment entered against him in New York State court. This

1

Court has already dismissed two actions Weaver brought arising out of the foreclosure judgment and, in its most recent dismissal decision, the Court directed Weaver to show cause why he should not be barred from filing further foreclosure-related lawsuits without prior permission from the Court. Weaver v. IndyMac Fed. Bank, FSB, No. 09 Civ. 5091 (LAP (LMS), 2019 WL 4563893, at *13 (S.D.N.Y. Sept. 9, 2019).

The instant order addresses two other complaints Weaver filed in 2017 and 2018 before the Court issued the show cause order (see Complaint, dated Feb. 24, 2017, Weaver v. Schiavo, No. 17 Civ. 1406 (LAP) (the "2017 Action") [dkt. no. 1]; Complaint, dated Oct. 29, 2018, Weaver v. Hanley, No. 18 Civ. 9955 (LAP) (the "2018 Action") [dkt. no. 1]), along with the open question of whether Weaver should be permitted to continue filing duplicative lawsuits regarding the foreclosure.

The defendants in the 2017 and 2018 Actions encompass virtually everyone who touched the state court foreclosure litigation, including the presiding judge, the county clerk, the referee who oversaw the foreclosure sale, and the attorneys, law firms, banks, and other entities involved in the foreclosure proceedings. They have moved to dismiss the 2017 and 2018 Actions under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (See 2017 Action dkt. nos. 10, 17, 20, 26; 2018 Action dkt. no. 35.) Defendant Nicole E. Schiavo, who was also

sued in one of Weaver's previously-dismissed federal actions, has moved for sanctions against Weaver under Federal Rule of Civil Procedure 11. (See 2018 Action dkt. no. 24.) For the following reasons, Defendants' motions to dismiss are GRANTED, and Weaver is enjoined from initiating any further litigation regarding the foreclosure judgment without first obtaining leave of Court. Schiavo's motion for sanctions is DENIED.

## I. Background

### a. The Parties

Plaintiff Everette Weaver is a resident of Hopewell Junction, New York, in Dutchess County. (2017 Action Compl. ¶ 3.) Defendants McCabe, Weisberg & Conway, P.C., Hogan Lovells US LLP, Nicole E. Schiavo, Stuart L. Druckman, Maria Sideris, and Melissa Dicerbo are counsel who participated in the foreclosure litigation. (See id. ¶¶ 4-6; 2018 Action Compl. ¶¶ 8-11.) The Honorable Maria G. Rosa is a Justice of the Supreme Court of the State of New York, Dutchess County, and presided over the foreclosure action. (2017 Compl. ¶ 13.) Bradford Kendall is the Clerk of Dutchess County. (Id. ¶ 12.) OneWest Bank, FSB ("OneWest")--now known as CIT Bank, N.A. ("CIT")--serviced and held the mortgage loan on the foreclosed property. (Id. ¶ 7.) Caryn Edwards, Patrick Overturf, and Salvatore Farrauto are employees of CIT who either submitted evidence in connection with the foreclosure action or executed

3

mortgage-related documents on behalf of the bank. (Id. ¶¶ 8-
10.) Defendant U.S. Bank Trust National Association, CVI LCF
Mortgage Loan Trust I, and Sheafe Woods Realty, LLC allegedly
acquired Weaver's mortgage loan or property in connection with
the foreclosure proceedings. (Id. ¶ 11; 2018 Compl. ¶¶ 12-13.)

        b. The Foreclosure Action

    In October 2007, Weaver borrowed $200,000 as a mortgage
loan from IndyMac Bank, FSB ("IndyMac") to buy property located
at 19 Eagle Ridge in Hopewell Junction, New York. (Declaration
of Jonathan B. Nelson, dated Apr. 26, 2019 ("Nelson Decl."),
2018 Action [dkt. no. 36], Ex. 9 at 63-94, 96.) In 2008, Weaver
defaulted on his loan payments, and in 2014, CIT, which held the
loan on behalf of IndyMac, initiated a foreclosure action
against Weaver in the Supreme Court of the State of New York.
(Nelson Decl. Ex. 9 at 56, 95.) Weaver filed an answer in the
foreclosure action containing fifteen affirmative defenses,
alleging, among other things, that CIT lacked standing to
enforce the note and mortgage and that its claim to standing was
based on fraudulent documents. (Nelson Decl. Ex. 5.)

    In 2016, Justice Rosa presided over a trial in the state
foreclosure action and issued a decision holding that CIT had
standing to foreclose, Weaver's defenses lacked merit, and
permitting CIT to proceed with appointing a referee to calculate
the amount due to CIT on the mortgage loan. (Nelson Decl. Exs.

4

6, 7.) In January 2017, CIT was granted a judgment of foreclosure and sale. (Nelson Decl. Ex. 8.) Following entry of the judgment, Weaver filed multiple appeals from orders entered in the foreclosure action. (See Nelson Decl. Ex. 12.) CIT moved to dismiss Weaver's appeals, and the Appellate Division granted that motion in August 2018. (Nelson Decl. Exs. 12, 13.) Weaver did not file any further appeals before his time to do so had expired. (Nelson Decl. ¶ 17.)

### c. The 2016 Action

In February 2016, Weaver filed a lawsuit in this Court against OneWest and others, alleging, among other things, that they had improperly pursued foreclosure against him based on fraudulent documents, including a falsified mortgage assignment. (See Complaint, dated Feb. 29, 2016, Weaver v. Golab, No. 16 Civ. 1535 (LAP) (the "2016 Action") [dkt. no. 1].) Weaver alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and New York General Business Law ("GBL") § 349(a), as well as a civil conspiracy claim. (Id., ¶¶ 44-113)

The defendants moved to dismiss the 2016 Action, and the Court granted their motions, finding that Weaver's claims were all barred by collateral estoppel:

> The premise underlying [Weaver's] claims in this case all rely, as a logical matter, upon OneWest's not having standing to bring the original

5

> foreclosure action. If OneWest had standing, as
> the Supreme Court in Dutchess County decided, all
> of Weaver's claims before this Court evaporate.
> Because the issue of standing and the validity of
> the mortgage assignment was fully-litigated in
> state court, issue preclusion/collateral estoppel
> attaches here.

(Order, dated Mar. 28, 2017, 2016 Action [dkt. no. 38] at 10.)

### d. The 2009 SDNY Action

In June 2009, Weaver initiated an action against IndyMac

and others in this Court. (See Complaint, dated June 1, 2009,

Weaver v. IndyMac Fed. Bank, FSB, No. 09 Civ. 5091 (LAP) ("2009

Action") [dkt. no. 1].) Weaver filed the operative complaint in

the 2009 Action in 2016, alleging that OneWest's foreclosure

action was unlawful and based on fraudulent documents and

asserting claims for violations of the FDCPA, the Real Estate

Settlement Procedures Act, New York GBL § 349(a), and for common

law fraud. (See Third Amended Complaint, dated Mar. 17, 2016,

2009 Action [dkt. no. 124] ¶¶ 94-129.)

Defendants moved to dismiss the 2009 Action, and on

September 9, 2019, the Court issued an order granting their

motions. Weaver, 2019 WL 4563893, at *1. The Court concluded

that the 2009 Action, like the 2016 Action, was barred by the

doctrine of collateral estoppel because Weaver's claims all

hinged on factual issues--including standing and the invalidity

of the mortgage assignment--that were already litigated and

ruled on in the state foreclosure action. Id. at *8-10. The

Court denied Weaver leave to amend and ordered him to show cause why he should not be barred from filing more actions arising from the state foreclosure action without leave of Court. Id. at *13.

On October 7, 2019, Weaver submitted a response to the Court's order to show cause. (Request for Pre-Motion Conference & Response to Order to Show Cause, dated Oct. 7, 2019, 2009 Action [dkt. no. 159].) In his response, Weaver again avers that the parties to the state foreclosure action had submitted fake and deceptive documents and that the foreclosure action did not give rise to collateral estoppel because it was a "sham trial in a Kangaroo Court." (See, e.g., id. at 7, 25.) Weaver also requested a pre-motion conference for a motion seeking my recusal because, among other reasons, the order to show cause purportedly constituted obstruction of justice. (See id. at 1, 27-29.) Weaver submitted a motion to that effect on November 8, 2019, and the Court denied it by order dated November 20, 2019. (See 2009 Action, dkt. nos. 162, 163.)

e. 2017 and 2018 Actions

This order concerns two more suits Weaver filed concerning the state foreclosure proceedings. These complaints essentially retread the same ground as those the Court previously dismissed, alleging that Defendants engaged in a wide range of misconduct in prosecuting the foreclosure action and carrying out the

7

foreclosure sale. Weaver asserts claims for violations of the
FDCPA, RICO, GBL § 349(a), and 42 U.S.C. § 1983, a claim for
negligence per se, an assortment of conspiracy-based claims, a
claim for unjust enrichment, and a claim for a declaration that
the mortgage was discharged and satisfied. (See 2017 Compl.
¶¶ 195-277; 2018 Compl. ¶¶ 237-361.)

Defendants moved to dismiss the 2017 and 2018 Actions under
Rule 12(b)(1) and 12(b)(6). In general, they contend that these
actions are impermissible appeals from the state court
foreclosure judgment over which this Court has no subject matter
jurisdiction, are barred by the doctrines of res judicata and
collateral estoppel, and fail to state a claim. (See Hogan
Lovells US LLP and Nicole E. Schiavo's Memorandum of Law in
Support of Defendants' Motion to Dismiss, dated Mar. 24, 2017,
2017 Action [dkt. no. 11]; CIT Bank, N.A., Caryn Edwards,
Patrick Overturf, and Salvatore Farrauto's Memorandum of Law in
Support of Defendants' Motion to Dismiss, dated May 16, 2017,
2017 Action [dkt. no. 27]; McCabe Weisberg & Conway, P.C.'s
Memorandum of Law in Support of Defendants' Motion to Dismiss,
dated Apr. 6, 2017, 2017 Action [dkt. no. 18]; Joint Memorandum
of Law in Support of Joint Motion to Dismiss ("Joint Memo"),
dated Apr. 26, 2019, 2018 Action [dkt. no. 37].) Justice Rosa
further argues that the Eleventh Amendment and the doctrine of
absolute immunity bar Weaver's claims against her. (Memorandum

of Law in Support of the Hon. Maria G. Rosa's Motion to Dismiss, dated Apr. 21, 2017, 2017 Action [dkt. no. 22].)  Dianne Braun Hanley, who acted as a referee in the state court foreclosure action, also contends that she is protected by absolute immunity. (Joint Memo at 18.)[1]

In the 2018 Action, Nicole Schiavo also moved for Rule 11 sanctions against Weaver.  Schiavo contends that Weaver's lawsuit has no merit and that sanctions are needed to prevent him from filing additional frivolous and harassing actions against her.  (See Memorandum of Law in Support of Nicole E. Schiavo's Motion for Fed. R. Civ. P. 11 Sanctions, dated Apr. 5, 2019, 2018 Action [dkt. no. 25].)  Schiavo requests monetary sanctions in an amount equaling her costs and fees incurred in connection with the 2018 Action and an order enjoining Weaver from initiating any new litigation in this Court against Schiavo arising from the foreclosure action.  (Id. at 13.)

## II.  Discussion

### a. Legal Standard

#### i.  Federal Rule of Civil Procedure 12(b)(1)

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks

---

[1]     On Weaver's consent, the Court previously dismissed Defendant Bradford Kendall from the 2017 Action.  (Order dated Mar. 9, 2017, 2017 Action [dkt. no. 8].)

the statutory or constitutional power to adjudicate it." Sasson
v. Hachette Filipacchi Presse, No. 15 Civ. 00194 (VM) (SN), 2016
WL 1599492, at *2 (S.D.N.Y. Apr. 20, 2016) (quoting Makarova v.
United States, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff
asserting subject matter jurisdiction has the burden of proving
by a preponderance of the evidence that jurisdiction exists."
Giammatteo v. Newton, 452 F. App'x 24, 27 (2d Cir. 2011) (citing
Makarova, 201 F.3d at 113).

In resolving a motion to dismiss for lack of subject matter
jurisdiction, "the court must take all facts alleged in the
complaint as true and draw all reasonable inferences in favor of
plaintiff," Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171
(2d Cir. 2006) (citation and quotation marks omitted), but
"jurisdiction must be shown affirmatively, and that showing is
not made by drawing from the pleadings inferences favorable to
the party asserting it," Sasson, 2016 WL 1599492, at *2
(quoting Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131
(2d Cir. 1998)).

### ii. Federal Rule of Civil Procedure 12(b)(6)

"When considering a motion to dismiss pursuant to Rule
12(b)(6), the district court . . . is required to accept as true
the facts alleged in the complaint, consider those facts in the
light most favorable to the plaintiff, and determine whether the
complaint sets forth a plausible basis for relief." Galper v.

JP Morgan Chase Bank, N.A., 802 F.3d 437, 443 (2d Cir. 2015). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not withstand a Rule 12(b) motion. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)); see also Twombly, 550 U.S. at 570 (if a plaintiff has not "nudged [his] claim across the line from conceivable to plausible, [the] Complaint must be dismissed"). In pro se actions like this one, the claims must be construed liberally and interpreted to raise the strongest arguments that they suggest. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). But even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and the Court may not "invent factual allegations that [a plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

### b. Rule 12(b)(1) Motions

#### i. Sovereign Immunity

Justice Rosa moves to dismiss the claims against her for lack of subject matter jurisdiction based on Eleventh Amendment sovereign immunity. "The Eleventh Amendment bars damages actions in federal court against a state and against state officials acting in their official capacities, unless the state waives sovereign immunity or Congress abrogates it." Chris H.

v. New York, 740 Fed. App'x 740, 741 (2d Cir. 2018). A claim that is barred by a state's sovereign immunity must be dismissed for lack of subject matter jurisdiction. Morales v. New York, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014).

Here, Weaver seeks money damages against Justice Rosa in her official capacity through his § 1983 claim and purported federal conspiracy claim. (See 2017 Action Compl. at 1 (naming Justice Rosa "in her official capacity as a Justice of the Supreme Court"); id. ¶¶ 242-43, 260-62.) Because New York has not waived, and Congress has not abrogated, sovereign immunity as to these claims, the Court lacks subject matter jurisdiction to adjudicate them. See Deraffele v. City of New Rochelle, No. 15 Civ. 282 (KMK), 2016 WL 1274590, at *13 (S.D.N.Y. Mar. 30, 2016) (finding that Eleventh Amendment barred section 1983 claim against New York State judge); Sierotowicz v. State of N.Y. Hous. & Cmty. Renewal, No. 04 Civ. 3886 (NGG), 2005 WL 1397950, at *2 (E.D.N.Y. June 14, 2005) (noting that federal conspiracy statutes did not abrogate state sovereign immunity). The claims against Justice Rosa are therefore dismissed.

### c. Rooker-Feldman

Defendants argue that the Court lacks subject matter jurisdiction over Weaver's cases under the Rooker-Feldman doctrine, which stands for the principle that "federal district courts lack jurisdiction over cases that essentially amount to

12

appeals of state court judgments." Vossbrinck v. Accredited
Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014).  The
Rooker-Feldman doctrine applies when four conditions are met:
(1) the plaintiff lost in state court; (2) the plaintiff
complains of injuries caused by the state-court judgment; (3)
the plaintiff invites the federal court to review and reject
that judgment; and (4) the state judgment was rendered before
the plaintiff filed the federal complaint.  Hoblock v. Albany
Cnty. Bd. Of Elecs., 422 F.3d 77, 87 (2d Cir. 2005).  The Court
of Appeals has described the first and fourth requirements as
"procedural" and the middle two as "substantive."  Id.

Although the muddled nature of Weaver's complaints in the
2017 and 2018 Actions complicates the analysis somewhat, the
Court concludes that for the vast majority of his claims, all
four Rooker-Feldman requirements are met.  As to the procedural
requirements, Weaver lost in state court when Justice Rosa
entered the judgment of foreclosure and sale.  (See Declaration
of Nicole E. Schiavo dated Mar. 24, 2017 ("Schiavo Decl."), 2017
Action [dkt. no. 12], Ex. 4.)  That judgment, entered on January
20, 2017, was rendered before Weaver filed his complaints in
these actions in February 2017 and October 2018.  (See id.)

Subject to the caveat noted below, the substantive
requirements of Rooker-Feldman are satisfied, as well.  Weaver
has not articulated the injuries underlying his claims with

13

crystalline clarity, but it is obvious that, like the complaints the Court already dismissed, these actions are at their core pleas for relief from a foreclosure judgment Weaver believes was erroneously and fraudulently obtained. See Weaver, 2019 WL 4563893, at *10 (observing that the 2009 Action was an attempt "to use this Court as an appeals court" for the case "he lost before Justice Rosa"); Order, 2016 Action [dkt. no. 38] at 9 (same with respect to the 2016 Action). Indeed, Weaver's complaints name as defendants nearly everyone who participated in the foreclosure proceedings and are essentially nothing more than laundry lists of Weaver's perceived problems with the foreclosure action. See Roberts v. Perez, No. 13 Civ. 5612 (JMF), 2014 WL 3883418, at *3 (S.D.N.Y. Aug. 7, 2014) (finding that "the detail with which Plaintiff complains of the state-court proceedings" and "the fact that Plaintiff specifically named . . . state-court litigation counsel" as a defendant demonstrated that plaintiff sought "to remedy harm caused by the state-court judgment"). If the Court were to adjudicate Weaver's claims, there would be no way around evaluating the propriety of Justice Rosa's rulings that, among other things, the note was legitimate and the lender had standing. Rooker-Feldman prohibits the Court from undertaking such a review.

Although the primary objective of Weaver's lawsuits is to redress purported wrongs in the foreclosure action, the Court

notes that, when construed liberally, the complaints could be read as seeking relief from some injuries that were not directly inflicted by the foreclosure judgment. To give one example, Weaver alleges that he suffered emotional distress as a result of false statements made during the foreclosure action. (See 2017 Action Compl. ¶¶ 219-27.) That kind of injury is arguably not caused by the state court judgment itself and would therefore not be barred by Rooker-Feldman. See Hoblock, 422 F.3d at 87 ("[F]ederal plaintiffs are not subject to the Rooker-Feldman bar unless they complain of an injury caused by a state court judgment." (emphasis in original)). Thus, while the Court lacks jurisdiction over all the claims requiring review and rejection of the foreclosure judgment, it declines to dismiss Weaver's complaints outright under the Rooker-Feldman doctrine.

## III. Rule 12(b)(6) Motions

To the extent the Court has subject matter jurisdiction over Weaver's claims, they are subject to dismissal under Rule 12(b)(6) based on the doctrines of judicial immunity and collateral estoppel and for failing to state a claim.

### a. Judicial Immunity

The claims against Justice Rosa and Hanley are foreclosed by judicial immunity, which insulates judges from civil

liability for actions taken in their official capacities.[2] See
DiBlasio v. Novello, 344 F.3d 292, 297 (2d Cir. 2003) ("[O]nce a
court determines that an official was functioning in a core
judicial . . . capacity, absolute immunity applies however
erroneous the act may have been, and however injurious in its
consequences it may have proved to the plaintiff." (internal
quotation marks omitted)). Weaver's claims against Justice Rosa
and Hanley all concern official actions they took during the
foreclosure proceedings, including, among other things, ruling
on motions, managing the trial, signing orders, and overseeing
the auction. (2017 Action Compl. ¶¶ 37, 39-42, 44-45, 48-54,
128; Oct. 29, 2018 Action Compl. ¶¶ 222-32.) Judicial immunity
bars those claims. See Norley, 2003 WL 22890402, at *5
(absolute immunity precluded suit against New York State judge
and referee based on their handling of state court litigation).

IV. Collateral Estoppel

Weaver's claims are also barred by collateral estoppel,
also known as issue preclusion, which prevents parties "from

---

[2]     Hanley, who was appointed as a referee by Justice Rosa and
ordered to sell the foreclosed property at auction, qualifies as
a judicial officer for purposes of the judicial immunity
analysis. See Norley v. HSBC Bank USA, No. 03 Civ. 2318 (DLC),
2003 WL 22890402, at *5 n.4 (S.D.N.Y. Dec. 9, 2003) (holding
that a referee appointed to set attorneys' fees at the close of
litigation was a judicial officer because judicial immunity
extends "to individuals performing duties 'closely associated
with the judicial process'" (quoting Cleavinger v. Saxner, 474
U.S. 193, 200 (1985))).

relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288-89 (2d Cir. 2002). Issue preclusion applies when: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Id. (quoting Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998)).

The Court previously dismissed two other similar lawsuits Weaver filed because the claims there all hinged on questions that had been raised, litigated, and necessarily resolved in the foreclosure action:

> The premise underlying [Weaver's] claims in this case all rely, as a logical matter, upon OneWest's not having standing to bring the original foreclosure action. If OneWest had standing, as the Supreme Court in Dutchess County decided, all of Weaver's claims before this Court evaporate. Because the issue of standing and the validity of the mortgage assignment was fully-litigated in state court, issue preclusion/collateral estoppel attaches here.

(Order, dated Mar. 28, 2017, 2016 Action [dkt. no. 38] at 7-10; see also Weaver v. IndyMac Fed. Bank, FSB, No. 09 Civ. 5091 (LAP), 2019 WL 4563893, at *8-10 (S.D.N.Y. Sept. 9, 2019).)

17

That same reasoning applies to Weaver's claims in the 2017 and 2018 Actions. Although Weaver has roped in some additional defendants and makes some new allegations--including that the note is supposedly not in default (see, e.g., 2018 Action Compl. ¶¶ 24-26)--his claims still rise and fall on issues previously resolved in the foreclosure action. Most notably, Weaver's complaints are again predicated on his contention that documents submitted in the state court proceedings were false and that OneWest had no standing to foreclose. (See, e.g., 2017 Action Compl. ¶¶ 32, 37, 66-126, 131-34, 161, 193, 198, 214-15, 220-22, 260; 2018 Action Compl. ¶¶ 29-57, 60, 70-72, 132-95, 202-07, 221-22, 238-58, 273-76, 287, 308, 332, 355.) The Court already held, twice, that collateral estoppel prevents re-litigation of those issues. The same is true with respect to Weaver's claim that there was no outstanding debt on the note and mortgage, given Justice Rosa's ruling that Weaver was in default and foreclosure was proper. (See 2017 Action Compl., Ex. Q (Apr. 8, 2016 Decision and Order) at 2-3 ("The plaintiff having produced the note, mortgage, evidence of default and its standing, it is ORDERED that plaintiff is entitled to proceed with this foreclosure action." (emphasis added)).) Collateral estoppel therefore bars Weaver's claims.

V.    Failure to State a Claim

Weaver's complaints are also dismissed under Rule 12(b)(6) for failing plausibly to allege entitlement to relief.    The Court will address Weaver's various claims in turn.

**Negligence Per Se.**    "As a general matter, New York follows the common law rule that a violation of a state statute that imposes a specific duty constitutes negligence per se." Christian Sanchez v. United States, No. 13 Civ. 2536 (JPO), 2015 WL 667521, at *2 (S.D.N.Y. Feb. 17, 2015).    Weaver's negligence per se claim is grounded on wholly conclusory allegations that certain documents and statements were false or misleading. Because Weaver does not plead any factual support for the negligence per se claim, it is dismissed.    See Fuentes v. Tilles, 376 Fed. Appx. 91 (2d Cir. 2010) (dismissing pro se complaint that "plainly fails to plead factual content that allows the court to draw the reasonable inference that the defendants are liable for the alleged misconduct" (citation, brackets, and internal quotation marks omitted)).

**Fair Debt Collection Practices Act.**    "To establish a violation under the FDCPA, (1) the plaintiff must be a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a debt collector, and (3) the defendant must have engaged in an act or omission in

violation of FDCPA requirements." Maleh v. United Collection Bureau, Inc., 287 F. Supp. 3d 265, 270 (E.D.N.Y. Jan. 26, 2018) (citation, brackets, and internal quotation marks omitted). Weaver pleads that Defendants violated the FDCPA through using deceptive and misleading tactics in the process of collecting a debt, but, as with his negligence claims, he does not allege any factual content supporting the inference that he is entitled to relief. The FDCPA claims are therefore dismissed.

**Racketeer Influenced and Corrupt Organizations Act.** To state a civil RICO claim, the plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999). Among other shortcomings, Weaver fails plausibly to allege that any Defendant engaged in prohibited conduct that would support a RICO claim. See D. Penguin Bros. Ltd. v. City Nat'l Bank, No. 13 Civ. 41 (TPG), 2014 WL 982859, at *3 (S.D.N.Y. Mar. 11, 2014) (plaintiff must show that "each defendant" participated in conducting the affairs of the RICO enterprise through the commission of at least two predicate acts), aff'd, 587 F. Appx. 663 (2d Cir. 2014) (summary order). Thus, the RICO claim fails.

**New York General Business Law § 349.** To state a claim under GBL § 349, the plaintiff must allege that the challenged act or practice was "consumer-oriented," "misleading in a

20

material respect," and that "plaintiff suffered injury as a result." Pelman ex rel. Pelman v. McDonald's Corp., 396 F. Supp. 2d 439, 444 (S.D.N.Y. 2005). At the very least, Weaver fails to satisfy the first prong of the GBL § 349 standard because he merely pleads conduct that affected him individually, not conduct that had "a broad impact on consumer at large." Bennett v. State Farm Fire & Cas. Co., 78 N.Y.S.3d 169, 172 (N.Y. App. Div. 2d Dep't 2018).

**Unjust Enrichment.** To prevail on an unjust enrichment claim, the plaintiff must demonstrate that (1) the defendant was enriched (2) at plaintiff's expense and (3) it is against equity and good conscience for the defendant to retain what plaintiff seeks to recover. Main Omni Realty Corp. v. Matus, 1 N.Y.S.3d 319, 320 (N.Y. App. Div. 2d Dep't 2015). Weaver has not alleged that CVI LCF Mortgage Loan Trust I or Sheafe Woods Realty LLC-- the two defendants named in the unjust enrichment claim-- received any property from Weaver that would be inequitable for them to retain. The unjust enrichment therefore fails.

**Conspiracy.** Weaver alleges multiple civil conspiracy claims, all of which are based on unsupported, conclusory allegations that cannot withstand a motion to dismiss. See Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("[T]he complaint must allege some factual basis for a finding of a conscious agreement among the defendants.");

Fierro v. Gallucci, No. 06 Civ. 5189 (JFB) (WDW), 2008 WL 2039545, at *16 (E.D.N.Y. May 12, 2008) ("[T]o survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy."). The conspiracy claims also fail insofar as they rely on purported criminal offenses that have no private right of action. See Greenblatt v. Richard Potasky Jewelers, No. 93 Civ. 3652 (LMM), 1994 WL 9754, at *4 n.4 (S.D.N.Y. Jan. 13, 1994) (no private right of action under 18 U.S.C. § 371); Reeves v. Wilkins, No. 10 Civ. 2766 (ARR) (MDG), 2012 WL 3835902, at *6 (E.D.N.Y. Aug. 31, 2012) ("New York does not provide a private cause of action for mail fraud, forgery, or perjury.").

**42 U.S.C. § 1983.** "[A] section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges." Kanciper v. Lato, 989 F. Supp. 2d 216, 234 (E.D.N.Y. 2013). Weaver predicates his § 1983 claim on Justice Rosa's purported violations of New York law and Weaver's constitutional due process rights. But state law violations do not support claims under § 1983, see, e.g., Berlickij v. Town of Castleton, 146 Fed. App'x 533, 535 (2d Cir. 1990), and an appeal from the state court foreclosure judgment, not a § 1983 claim filed in federal court, was the appropriate

recourse for any due process violations caused by Justice Rosa's purportedly erroneous decisions. See McArthur v. Bell, 788 F. Supp. 706, 709-10 (E.D.N.Y. Apr. 6, 1992) (noting that "there is no violation of the Fourteenth Amendment where the state provides plaintiff with an adequate post-deprivation remedy" and that the "appellate procedure" of the New York State court system "is, beyond question, an adequate post-deprivation remedy"). Weaver's § 1983 claim is therefore dismissed.

VI. Order to Show Cause

The Court now turns to its September 9, 2019 order directing Weaver to show cause why he should not be barred from filing further actions arising out of the foreclosure judgment. See Weaver v. IndyMac Fed. Bank, FSB, No. 09 Civ. 5091 (LAP), 2019 WL 4563893, at *13 (S.D.N.Y. Sept. 9, 2019). Having considered Weaver's response to the show cause order (see Request for Pre-Motion Conference & Response to Order to Show Cause, dated Oct. 7, 2019, 2009 Action [dkt. no. 159]), the Court concludes that a filing injunction is warranted.

"The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties' and an unnecessary burden on the courts and their supporting personnel." Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000)

23

(per curiam) (citation, internal quotation marks and brackets omitted). Issuing a filing injunction "is appropriate when a plaintiff 'abuse[s] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings." Id. (quoting In re Hartford Textile Corp., 659 F.2d 299, 305 (2d Cir. 1981) (per curiam).

The Court of Appeals has instructed district courts to evaluate the following factors when deciding whether to impose a filing injunction:

> (1) The litigant's history of litigation and whether it entailed vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and their parties.

Safir v. U.S. Lines Inc., 792 F.2d 19, 24 (2d Cir. 1986). The key, overarching question in the analysis "is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Id.

Considering the above factors, there is no question that the circumstances call for a filing injunction against Weaver. He has now filed four cases in this Court seeking to relitigate the foreclosure action, and all four have been dismissed on collateral estoppel and other grounds. Weaver's response to the

Court's order to show cause underscores why a filing injunction is needed here. In his submission, Weaver makes absolutely no showing in fact or law as to why he should be allowed to continue filing lawsuits related to the foreclosure judgment. Instead, he rehashes the same litany of purported injustices from the foreclosure proceedings that formed the core of his last four complaints and slings baseless attacks of fraud and corruption at the parties and the Court. It is now crystal clear that Weaver has no motive in prosecuting these actions beyond harassing the parties. Based on his pattern of conduct, there is an acute risk that absent an injunction, Weaver will continue piling on frivolous lawsuits, wasting the time and resources of the parties and the Court. It is time for the repetitive and harassing litigation to end and for everyone, including Weaver, to move on with their lives.

Weaver is therefore enjoined from filing any new civil action or proceeding in this Court concerning the foreclosure judgment without first obtaining leave of Court. In the event that Weaver seeks to commence further foreclosure-related litigation, he must (1) append a copy of this order to any new complaint and (2) file contemporaneously with the complaint a motion for leave to commence a new action that sets forth the good faith basis for the new complaint. No party needs to respond to any future foreclosure-related complaint unless and

until the Court grants Weaver's motion for leave to commence the new action.  A violation of this injunction will result in further sanctions against Weaver.  Nothing in this order shall be construed as limiting Weaver's access to the United States Court of Appeals for the Second Circuit.[3]

VII. Conclusion

For the foregoing reasons, Defendants motions to dismiss (Weaver v. Schiavo, No. 17 Civ. 1406, dkt. nos. 10, 17, 20, 26; Weaver v. Hanley, No. 18 Civ. 9955, dkt. no. 35) are GRANTED. Schiavo's motion for sanctions (Weaver v. Schiavo, No. 17 Civ. 1406, dkt. no. 24) is DENIED.  Weaver may not file any further actions arising out of the state foreclosure judgment that is the subject of the above-noted actions without Court permission.

The Clerk of the Court shall mark these actions closed and all pending motions denied as moot.

**SO ORDERED.**

Dated:     New York, New York
           January 30, 2020

                                    _Loretta A. Presky_
                                    Loretta A. Preska
                                    Senior U.S. District Judge

---

[3]    Defendant Schiavo has moved under Rule 11 for an order enjoining Weaver from initiating any new litigation against her regarding the foreclosure action and imposing monetary sanctions.  (See 2018 Action dkt. no. 24.)  In light of the Court's decision to impose a filing injunction against Weaver, Schiavo's request for a separate injunction is denied as moot. Her request for monetary sanctions is denied.